UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANDREA K.,                                    *

    Plaintiff,                            *

v.                                            *            Civil Action No. EA-25-1237

COMMISSIONER OF SOCIAL                        *
SECURITY,
                                              *
    Defendant.
                                              *

**MEMORANDUM OPINION**

On April 16, 2025, Plaintiff Andrea K. petitioned this Court to review the final decision

of the Social Security Administration (SSA or Commissioner) denying her claim for benefits.

ECF No. 1.  This case was referred to a United States Magistrate Judge with the parties'

consent.[1]  ECF Nos. 4–6; 28 U.S.C. § 636; Local Rule 301.4 (D. Md. Dec. 1, 2025).  Pending

before the Court is Plaintiff's appeal, which is fully briefed.  ECF Nos. 12, 16–17.  No hearing is

necessary.  Local Rule 105.6.  This Court must uphold the decision of the SSA if it is supported

by substantial evidence and if the SSA employed proper legal standards.  42 U.S.C. §§ 405(g),

1383(c)(3); *Craig* v. *Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Under that standard, and for the

reasons set forth below, the Commissioner's decision is affirmed.

## I.    BACKGROUND

### A.    Procedural History

On February 2, 2021, Plaintiff filed an application for Supplemental Security Income

under Title XVI of the Social Security Act (the Act), 42 U.S.C. § 1381 *et seq*., alleging a

---

[1]  This case was reassigned to the undersigned on February 6, 2026.

disability onset date of August 25, 2020.[2]  ECF No. 9-4 at 29, 37.[3]  Plaintiff claims she is

disabled within the meaning of the Act because she is unable to work due to vision loss,

scoliosis, arthritis, insomnia, anxiety, depression, and bipolar disorder.  ECF No. 12 at 1.  The

SSA denied Plaintiff's application for benefits on October 13, 2021.  ECF No. 9-5 at 12.

Plaintiff sought reconsideration, and the SSA affirmed its initial decision on February 3, 2023.

*Id.* at 17, 31.  Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which

was held on February 7, 2024.  *Id.* at 35; ECF No. 9-3 at 41–72.  The ALJ rendered a decision on

April 1, 2024, in which she found that Plaintiff was not disabled within the meaning of the Act.

ECF No. 9-3 at 15.  Plaintiff requested review of the ALJ's decision, which the Appeals Council

denied on March 3, 2025.  *Id.* at 2, 8.  The ALJ's April 1, 2024 decision therefore constitutes the

final, reviewable decision of the SSA.  *Sims* v. *Apfel*, 530 U.S. 103, 106-107 (2000); 42 U.S.C.

§ 1383(c)(3); 20 C.F.R. § 422.210(a).

---

[2]  Plaintiff unsuccessfully applied for Disability Insurance under Titles II of the Social
Security Act (the Act), 42 U.S.C. § 401 *et seq.*, on June 23, 2011; August 28, 2014; and March
23, 2015; and for Supplemental Security Income benefits under Title XVI of the Act, 42 U.S.C.
§ 1381 *et seq.*, on June 25, 2004; September 26, 2005; May 21, 2009; June 23, 2011; and March
23, 2015.  ECF No. 9-3 at 19.  In a written decision dated August 24, 2020, an Administrative
Law Judge (ALJ) found that Plaintiff was not disabled within the Act and that the Commissioner
of Social Security (Commissioner) had properly denied her March 23, 2015 application for Title
XVI benefits.  ECF No. 9-4 at 5.

The primary difference between these two disability benefit programs is the applicant's
employment history and financial resources.  *Delk* v. *Colvin*, 675 Fed. Appx. 281, 282 (4th Cir.
2017) (explaining that the Disability Insurance Program provides benefits to individuals "who
have contributed to the program while employed," whereas Supplemental Security Income
provides benefits based on financial need); *see also* 42 U.S.C. §§ 423(a)(1), 1381a, 1382.

[3]  Page numbers refer to the pagination of the Court's Case Management/Electronic Case
Files (CM/ECF) system printed at the top of the cited document.

B.      **Statutory Framework**

The Act authorizes Supplemental Security Income payments to "persons who have a 'disability.'" *Barnhart* v. *Thomas*, 540 U.S. 20, 21 (2003). The Act defines disability as being "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a). To receive the requested benefit under the SSA, "a plaintiff has the burden of proving disability." *Britt* v. *Saul*, 860 Fed. Appx. 256, 257 (4th Cir. 2021). Federal regulations require the ALJ to evaluate a claimant's disability claim using a five-step sequential evaluation process. 20 C.F.R. § 416.920. Through this process, an ALJ evaluates, in order, "whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Hancock* v. *Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "The applicant bears the burden of production and proof during the first four steps of the inquiry." *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Mascio* v. *Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (internal quotation marks and citation omitted).

If the claimant does not carry their burden at the third step of the sequential evaluation, the ALJ must then assess relevant evidence and make a finding regarding the claimant's residual functional capacity. 20 C.F.R. § 416.920(e); *Monroe* v. *Colvin*, 826 F.3d 176, 179 (4th Cir.

2016).  Residual functional capacity is defined as "the most [the claimant] can still do despite [their physical and mental] limitations."  20 C.F.R. § 416.945.  The residual functional capacity assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis."  *Mascio*, 780 F.3d at 636 (quoting Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims (SSR 96-8p), 61 Fed. Reg. 34,474, 34,475 (July 2, 1996) (quotation marks omitted)).  "Only after such a function-by-function analysis may an ALJ express [residual functional capacity] 'in terms of the exertional levels of work.'"  *Monroe*, 826 F.3d at 187 (quoting *Mascio*, 780 F.3d at 636).  The ALJ then uses the residual functional capacity determination at the fourth and fifth steps of the disability assessment.  20 C.F.R. § 416.920(e); *Monroe*, 826 F.3d at 179-180.

### C.    The ALJ's Decision

At step one of the five-step sequential disability evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the relevant application date.  ECF No. 9-3 at 21–22.  At step two, the ALJ found that Plaintiff suffered from the severe impairments of obesity, bipolar disorder, adjustment disorder, situational depression, and anxiety.  *Id.* at 22.  At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."[4]  *Id.* at 23 (bold removed).  Before continuing to the

---

[4] Appendix 1 to 20 C.F.R. Part 404, Subpart P provides a listing of impairments.  Within Appendix 1, "Adult Listings 12.00 *et seq.* . . . pertain to mental impairments, and consist of (1) 'paragraph A criteria,' which consist of a set of medical findings; (2) 'paragraph B criteria,' which consist of a set of impairment-related functional limitations; and (3) 'paragraph C criteria,' which relate to 'serious and persistent' disorders lasting at least two years with a history of ongoing medical treatment and marginal adjustment."  *Autumn T.* v. *Saul*, Civil Action No. DLB-19-1572, 2020 WL 4194145, at *3 (D. Md. July 21, 2020).  The listing of impairments found in this appendix is incorporated into the evaluation criteria for Supplemental Security Income

fourth step, the ALJ determined that Plaintiff retained the residual functional capacity to:

> perform light work . . . , except . . . [she] is only limited to simple, routine, repetitive tasks, not at a production pace rate, meaning no assembly line type work, no hourly quotas, the work is done at a consistent pace throughout the day; the claimant can only occasionally interact with supervisors and coworkers; the public contact is only superficial; any job would not be able to be performed unless there was a calculator to do math; and the reading would have to be minimal at an eighth grade [level] or less.

*Id.* at 26.  At the fourth step, the ALJ determined that Plaintiff has no past relevant work.  *Id.* at 34.  Lastly, at the fifth step, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  *Id.* at 35.  The ALJ therefore concluded that Plaintiff had not been under a disability as defined in the Act, and the SSA had properly denied her application for benefits.  *Id.* at 36.

## II.    DISCUSSION

Plaintiff argues that (1) the ALJ improperly relied on her own lay opinion to determine Plaintiff's residual functional capacity and (2) erred at step five by relying on job numbers which do not correspond to the cited occupations.  ECF No. 12 at 1, 11–17.  Following discussion of the applicable standard of review, each argument is addressed in turn below.

### A.    Standard of Review

The scope of judicial review of the SSA's disability determination is "circumscribed."  *Britt*, 860 Fed. Appx. at 259 (citing 42 U.S.C. § 405(g)).[5]  The Court must affirm the decision "so long as the agency applied correct legal standards and factual findings are supported by substantial evidence."  *Id.*; *accord Mascio*, 780 F.3d at 634; *Coffman* v. *Bowen*, 829 F.2d 514,

---

benefits.  20 C.F.R. § 416.925.

[5] After a hearing to determine an individual's eligibility for Supplemental Security Income benefits, the Commissioner's final determination is subject to the same judicial review as provided in 42 U.S.C. § 405(g).  42 U.S.C. § 1383(c)(3).

517 (4th Cir. 1987).  Factual findings supported by substantial evidence "shall be conclusive." 42 U.S.C. § 405(g); *see also Hays* v. *Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("[I]t is not within the province of a reviewing court to determine the weight of evidence, nor is it the court's function to substitute its judgment for that of the Secretary if [the] decision is supported by substantial evidence.").

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek* v. *Berryhill*, 587 U.S. 97, 102 (2019).  Under this standard of review, substantial evidence "means—and only means—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 103 (quoting *Consolidated Edison Co.* v. *NLRB*, 305 U.S. 197, 229 (1938)); *see also Laws* v. *Celebrezze*, 386 F.2d 640, 642 (4th Cir. 1966) ("Substantial evidence . . . is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.").  It is "more than a mere scintilla . . . [and] somewhat less than a preponderance." *Laws*, 368 F.2d at 642.  The "threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103.

In conducting the substantial evidence inquiry, this Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence.  *Sterling Smokeless Coal Co.* v. *Akers*, 131 F.3d 438, 439-440 (4th Cir. 1997).  Although an ALJ's decision must be sufficiently detailed to allow for meaningful judicial review, an "elaborate or even sophisticated" explanation is not required.  *Mascio*, 780 F.3d at 636-637; *T-Mobile S., LLC* v. *City of Roswell*, 574 U.S. 293, 302 (2015).  Rather, an administrative decision's reasoning need only be "reasonably discernible." *Garland* v. *Ming Dai*, 593 U.S. 357, 369 (2021).  "Meaningful review is frustrated—and remand necessary—only where [the court is] unable to fathom the [ALJ's] rationale in relation to evidence in the record." *Britt*, 860 Fed. Appx. at 262 (internal quotation marks and citation omitted).

###### B. Residual Functional Capacity and Improper Lay Opinion

A claimant's residual functional capacity is determined using a two-step process.  The ALJ must first "identify the individual's functional limitations . . . and assess [their] work-related abilities on a function-by-function basis."  SSR 96-8p, 61 Fed. Reg. at 34,475.  "The function-by-function approach asks the ALJ to consider a claimant's specific 'exertional and nonexertional functions.'"  *Ladda* v. *Berryhill*, 749 Fed. Appx. 166, 173 (4th Cir. 2018) (quoting SSR 96-8p, at 61 Fed. Reg. 34,476).  The ALJ then expresses a claimant's residual functional capacity "in terms of the exertional levels of work," such as "sedentary, light, medium, heavy, and very heavy."  SSR 96-8p, 61 Fed. Reg. at 34,475; *see also* 20 C.F.R. § 416.967 (defining the physical exertion requirements of each exertional level of work).  "When a claimant has several impairments, including non-severe impairments, the administrative law judge must consider their cumulative effect in making a disability determination."  *Britt*, 860 Fed. Appx. at 261 (citing 20 C.F.R. § 416.945(a)(2)); *accord Brown* v. *Commissioner, Soc. Sec. Admin.*, 873 F.3d 251, 255 (4th Cir. 2017); *Mascio*, 780 F.3d at 635.

When formulating a residual functional capacity assessment, an ALJ "must consider all the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'"  *Thomas* v. *Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe*, 826 F.3d at 188) (alteration in original); *see also* SSR 96-8p, 61 Fed. Reg. at 34,477 (providing that an ALJ must consider the "limitations and restrictions imposed by *all* of an individual's impairments, even those that are not 'severe,'" when assessing a claimant's residual functional capacity).  While the SSA guidelines require a "function-by-function" analysis to determine a claimant's residual functional capacity, the United States Court of Appeals for the Fourth Circuit has held that this analysis does not need to be explicit.  *Mascio*, 780 F.3d at 636 (rejecting "a per se rule requiring remand

when the ALJ does not perform an explicit function-by-function analysis").  Instead, the key

consideration is whether the ALJ identified the evidence relied upon in determining the

claimant's residual functional capacity and built "an accurate and logical bridge from the

evidence to that conclusion."  *Monroe*, 826 F.3d at 189 (internal quotation marks and citation

omitted).  A proper residual functional capacity analysis "has three components: (1) evidence,

(2) logical explanation, and (3) conclusion."  *Thomas*, 916 F.3d at 311.  The second component

of this analysis, "the ALJ's logical explanation, is just as important as the other two."  *Id.*; *see*

*also* SSR 96-8p, 61 Fed. Reg. at 34,478 ("The [residual functional capacity] assessment must

include a narrative discussion describing how the evidence supports each conclusion, citing

specific medical facts . . . and nonmedical evidence.").

Here, Plaintiff argues that the ALJ "improperly crafted" Plaintiff's residual function

capacity "based on her own lay opinion," which was, in essence, "playing doctor."  ECF Nos. 12

at 11–13; 17 at 1–3.  The Commissioner asserts that the ALJ "need not rely on a medical opinion

or prior administrative medical or psychological finding to formulate an appropriate residual

functional capacity," and that the ALJ's residual functional capacity assessment is supported by

substantial evidence from the record.  ECF No. 16 at 6–8.

An ALJ is prohibited from substituting their "own lay opinion for a medical expert's

when evaluating the significance of clinical findings."  *Arakas* v. *Commissioner, Soc. Sec.*

*Admin.*, 983 F.3d 83, 108 (4th Cir. 2020); *Lewis* v. *Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017)

(holding that an ALJ's designation of a claimant's extensive medical treatment as

"'conservative' amounts to improperly 'playing doctor' in contravention of the requirements of

applicable regulations").  While an ALJ "cannot play the role of doctor and interpret medical

evidence when he or she is not qualified to do so, the weighing of various evidence is precisely

the typical province of the ALJ."  *Marshall* v. *Berryhill*, Civil Action No. TMD-16-62, 2017 WL

8

1196488, at *4 (D. Md. Mar. 31, 2017) (internal quotation marks and citations omitted). Importantly, the reviewing court may not substitute its own judgment for that of the Commissioner or reweigh the evidence as long as the ALJ's decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456.

This Court has confronted Plaintiff's first argument on many prior occasions. In some instances, decisions of this Court have credited the improper lay opinion argument, particularly where the ALJ's decision lacked explanation. *E.g.*, *Tonya B.* v. *Kijakazi*, Civil Action No. SAG-20-1361, 2021 WL 3291513, at *4 (D. Md. Aug. 2, 2021) (deciding that the ALJ was "playing doctor" where the ALJ's findings "ran counter" to medical evidence and the ALJ did not did not explain why she did not credit those opinions with respect to Plaintiff's functional limitations). Other decisions have rejected this argument as an impermissible request to reweigh evidence. *E.g.*, *Kimberly C.* v. *Kijakazi*, Civil Action No. ADC-20-2775, 2021 WL 5449069, at *5 (D. Md. Nov. 22, 2021) (concluding that Plaintiff's allegation that the ALJ was "playing doctor" was "merely a request to reweigh evidence" and the Plaintiff failed to meet her burden of providing the evidence the ALJ would use to determine her residual functional capacity). The key consideration is whether the ALJ's evaluation of medical and other evidence is supported by substantial evidence. *E.g.*, *Demetrius J.* v. *Saul*, Civil Action No. JMC-18-3812, 2019 WL 7037956, at *4-5 (D. Md. Dec. 20, 2019) (finding the ALJ's residual functional capacity determination was supported by substantial evidence and she was not improperly "reaching her own medical conclusions about the evidence"); *Marshall*, 2017 WL 1196488, at *4-5 (holding that the ALJ did not "improperly substitute[] her opinion for the opinion of doctors" where substantial evidence supported the ALJ's assignment of little weight to a medical opinion).

Plaintiff relies on Hillary Lake, MD's September 20, 2021 and Y. Sagawa, MD's February 2, 2023 opinions to assert that "the state agency psychiatric experts did not assess

Plaintiff's [residual functional capacity], nor provide any meaningful account of Plaintiff's functional limitations." ECF No. 12 at 12–13 (internal quotations omitted). In both of these opinions, the doctors concluded that there was insufficient medical evidence in the record to assess Plaintiff's mental impairments. ECF No. 9-4 at 34, 42. Plaintiff contends that the ALJ "acknowledged these expert conclusions, but she disagreed with and dismissed them" and instead found that there was sufficient evidence that the physicians could have relied upon in determining Plaintiff's residual functional capacity. ECF No. 12 at 12–13; *see also* ECF No. 9-3 at 31–32. This, in Plaintiff's view, constitutes the ALJ impermissibly substituting her own opinion for that of the medical professionals. ECF Nos. 12 at 12–13; 9-3 at 31–33.

This Court held in *Marshall* that a "typical case of an ALJ impermissibly 'playing doctor' is when the ALJ draws medical conclusions themselves about a claimant without relying on medical evidence." 2017 WL 1196488, at *4 (internal quotation marks and citation omitted). That is not what occurred here. The ALJ evaluated at least eleven mental status evaluations conducted between October 2021 and January 2023, five medical opinions, and a previous 2020 unfavorable ALJ decision and concluded that neither Dr. Lake nor Dr. Sagawa's medical opinions were "supported by the findings of fact and analysis of evidence" nor were they "consistent with the evidence of record as a whole." ECF No. 9-3 at 27–32. As this Court noted in *Demetrius J.*, "an ALJ need not accept the opinion of any physician (including a treating physician) if such is brief, conclusory, and inadequately supported by clinical findings." 2019 WL 7037956, at *5. Here, the ALJ identified the evidence that was inconsistent with Dr. Lake's and Dr. Sagawa's opinions and concluded that there was, in fact, sufficient evidence for the doctors to determine Plaintiff's mental functioning capacity. ECF No. 9-3 at 31–32. While Plaintiff appears to argue the ALJ cannot "craft[] the mental [residual functional capacity]" herself, that is precisely what the regulations and case law require. ECF No. 12 at 11–13; 20

C.F.R. 416.946(c) ("[T]he administrative law judge . . . is responsible for assessing your residual functional capacity."); *Felton-Miller* v. *Astrue*, 459 Fed. Appx. 226, 230-231 (4th Cir. 2011) ("[Residual functional capacity] is an administrative assessment made by the Commissioner based on all the relevant evidence in the case record.").  Furthermore, an ALJ is "not required to obtain an expert medical opinion as to [Plaintiff's residual functional capacity]."  *Id.* at 231; *Marshall*, 2017 WL 1196488, at \*5 ("A medical expert's opinion as to whether one is disabled is not dispositive; opinions as to disability are reserved for the ALJ and for the ALJ alone.").

Similar to *Kimberly C.,* Plaintiff appears to argue that the Court should "disregard the ALJ's finding in light of other evidence (or, more accurately here, non-evidence)" which "is merely a request to reweigh evidence."  2021 WL 5449069, at \*5.  An ALJ's determination as to the persuasiveness of a medical opinion "generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies.'"  *Dunn* v. *Colvin*, 607 Fed. Appx. 264, 267 (4th Cir. 2015) (internal citation omitted).  No such inconsistencies exist here.

### C.      Vocational Expert Testimony

At the fifth step, the Commissioner has the burden to prove by preponderant evidence that a claimant can perform work that exists in significant numbers in the national economy considering the claimant's residual functional capacity, age, and work experience.  *Mascio*, 780 F.3d at 635.  "To answer this final question—whether sufficient other work exists for the claimant in the national economy—the ALJ 'rel[ies] primarily' on the *Dictionary* [*of Occupational Titles*]," which is an SSA resource that "list[s] occupations existing in the economy and explain[s] some of the physical and mental requirements of those occupations."  *Pearson* v. *Colvin*, 810 F.3d 204, 207, 205 n.1 (4th Cir. 2015) (first alteration in original) (quoting Social Security Ruling 00-4p (SSR 00-4p), Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable

Occupational Information in Disability Decisions, 2000 WL 1898704, at *2 (Dec. 4, 2000)). "The ALJ 'may also use' a vocational expert to address complex aspects of the employment determination, including the expert's observations of what a particular job requires in practice or the availability of given positions in the national economy." *Id.* at 207 (quoting SSR 00-4p, 2000 WL 1898704, at *2).

The Act defines "work which exists in the national economy" as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A) (internal quotation marks omitted). The Fourth Circuit has not explicitly defined what constitutes significant numbers, but "has allowed very small numbers to fulfill the requirement." *Clarence M.* v. *Commissioner, Soc. Sec. Admin.*, Civil Action No. SAG-21-2163, 2022 WL 958473, at *5 (D. Md. Mar. 30, 2022). *E.g.*, *Hodges* v. *Apfel*, 203 F.3d 820 (4th Cir. 2000) (153 jobs); *Hyatt* v. *Apfel*, 153 F.3d 720 (4th Cir. 1998) (650 jobs); *Lawler* v. *Astrue*, Civil Action No. BPG-09-1614, 2011 WL 1485280, at *5 (D. Md. Apr. 19, 2011) (75-100 jobs); *see also Hicks v. Califano,* 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (declining to determine that 110 regional jobs would be an insignificant number). Further, this Court has held that the "ALJ need only identify a single job within the claimant's capacity that exists in significant numbers in the national economy at step five." *Howard W.* v. *O'Malley*, Civil Action No. CDA-23-687, 2024 WL 1194488, at *4 (D. Md. Mar. 20, 2024) (internal quotation and alteration omitted); *accord Leggett* v. *Commissioner, Soc. Sec. Admin.*, Civil Action No. SAG-12-1405, 2013 WL 1352298, at *3 (D. Md. Apr. 2, 2013); *Lawler*, 2011 WL 1485280, at *5. This interpretation is consonant with the applicable regulation, which provides that "[w]ork exists in the national economy when there is a significant number of jobs (*in one or more occupations*) having requirements which [the claimant is] able to meet with [their] physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(b) (emphasis added).

12

Here, Plaintiff argues that the ALJ's step five determination is not supported by substantial evidence because there is a "gross disparity" between the actual data and job numbers cited by the vocational expert, which calls into doubt the "reliability of the vocational expert." ECF No. 12 at 17 (internal quotation marks and citation omitted).  For example, Plaintiff argues, the vocational expert cited 21,000 agricultural produce sorter jobs, which reflects the "22,000 . . . combined total of all twelve occupations found in that grouping, just 5,032 of which are said to be agricultural produce sorters." *Id.* at 16–17.  Similarly, the expert cited 400,000 housekeeping cleaner jobs, but "the individual number of jobs for a housekeeper [is] estimated at less than 200,000." *Id.* at 17.  Yet, as the Commissioner correctly argues, "even by Plaintiff's own estimate," the number of housekeeper jobs alone "would be sufficient to account for significant numbers in the national economy." ECF No. 16 at 10.  Plaintiff estimates that the actual number of jobs in the national economy that claimant can perform totals 213,466.  ECF No. 12 at 16–17 (listing 64 compact assembler jobs; 930 frame polisher jobs; 2,380 nut sorter jobs; 5,032 agricultural-produce sorter jobs; 5,060 office helper jobs; and 200,000 housekeeper jobs).  Accepting Plaintiff's assertion that a "nut sorter" is an obsolete job (*id*. at 15), that still leaves 211,086 jobs in the national economy that Plaintiff can perform—a figure that is substantially higher than the smaller numbers the Fourth Circuit and this Court have found to satisfy the Commissioner's burden at step five.  In sum, the ALJ did not err in finding that jobs exist in significant numbers in the national economy that Plaintiff can perform.

### III.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed.  A separate Order follows.


Date:  April 16, 2026                                        _____/s/_____
                                                            Erin Aslan
                                                            United States Magistrate Judge